E-FILED IN OFFICE - CS
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-06196-8**
**10/2/2023 10:16 PM**
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **JOSEPH M. WILLIAMS,**<br>Plaintiff, | |
| v.<br>**STATE OF GEORGIA,** | CIVIL ACTION<br>FILE NO.: 2023-A-06196-8 |
| **GEORGIA DEPARTMENT OF CORRECTIONS,**<br>and<br>**PHILLIPS STATE PRISON**<br>Defendants. | |

### PLAINTIFF'S BRIEF IN RESPONSE AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COMES NOW Joseph M. Williams, by and through his counsel, hereby files Plaintiff's Brief In Response and In Opposition to Defendants' Motion to Dismiss and respectfully shows the Court the following:

### I. STATEMENT OF FACTS

Plaintiff initially filed this action against the State of Georgia, Georgia Department of Corrections ("GDC"), and Phillips State Prison pursuant to the Georgia Tort Claims Act under O.C.G.A § 50-21-20 et seq., the Georgia Whistleblower Act under O.C.G.A § 45-1-4, and pursuant to common law negligence. In his Complaint, Plaintiff asserts various negligent acts (and omissions) on the part of the Georgia Department of Corrections in failing to properly maintain its facility and security systems, failing to provide sufficient staffing of its facility, and failing to provide sufficient supervision, among other things, all in violation of the GDC's Standard Operating Procedures (SOPs) and all of which directly and proximately caused Plaintiff's injuries. Plaintiff also asserts malicious and willful acts committed against him by

1

prison officials in retaliation for filing an internal grievance and, therefore, exercising his First Amendment rights.

In response to Plaintiff's Complaint, Defendants filed a motion to dismiss on various grounds. Specifically, Defendants contend that (1) this Court lacks subject matter jurisdiction on grounds of sovereign immunity under the Georgia Tort Claims Act ("GTCA"), (2) Plaintiff failed to strictly comply with the notice and mailing provision of the GTCA, O.C.G.A§ 50-21-35, and (3) Defendants the State of Georgia and Phillips State Prison are improper Defendants under O.C.G.A § 50-21-25.[1]

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. The Court Should Deny Defendants' Motion to Dismiss as There Is a Waiver of Sovereign Immunity Under the Georgia Tort Claims Act for Negligence in the Commission or Omission of Ministerial Duties and For Malicious and Willful Acts Committed by Government Officials

1. Defendants' Omissions and Negligent Performance of Ministerial Functions Bar Them from the Protection of Sovereign Immunity.

The GTCA waives sovereign immunity of the state for the torts of state officers and employees working within the scope of their official duties or employment and the state is liable for such torts in the same manner a private individual or entity would be under like circumstances. O.C.G.A § 50-21-23.

Liability may attach to the state and thus state officers, departments, and agencies for damages and injuries caused by "the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with malice or

---

[1] Plaintiff concedes that the State of Georgia and Phillips State Prison are improper Defendants under O.C.G.A § 50-21-25(b) and has filed an amended complaint to reflect their removal.

2

with actual intent to cause injury in the performance of their official functions." Ga. Const. of 1983, Art. I, Sec II., Para IX (d). See also Chisolm v. Tippens, 289 Ga. App. 757 (Ga. App. 2008). The Court in Gilbert v. Richardson, 264 Ga. 744, 753 (Ga. 1994) held that *official functions* "mean any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts."

In determining whether liability attaches, the proper analysis is whether the state officer, employee, or department was performing a discretionary function or a ministerial function at the time the injury or damage was incurred. Barnett v. Caldwell, 302 Ga. 845, 848 (Ga. 2018). A ministerial function is "'commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.'" Id. (quoting *Murphy v. Bajjani*, 282 Ga. 197, 199, 647 S.E.2d 54 (2007)). On the other hand, a discretionary function "'calls for the existence of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.'" Id.

Under Georgia law, there is "no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure." Richardson, 264 at 753. Furthermore, there is no immunity for the failure to perform ministerial duties or functions required by law or policy. McDay v. City of Atlanta, 204 Ga. App. 621(Ga. App. 1992). However, there is immunity for the negligent performance of discretionary acts.

In the present case, Plaintiff's Complaint outlines numerous failures, negligence, and malicious acts committed by prison officials while working within the scope of their official duties or employment. In particular, the negligence and failures committed by prison officials

3

involved duties that are ministerial in nature and, therefore, are not accorded the protection of sovereign immunity nor official immunity. In Wanless v. Tatum, 244 Ga. App. 882, 884 (Ga. App. 2000), the Georgia Court of Appeals held that "'while the acts of establishing a policy in the first place is discretionary, the acts of following established policies… are ministerial.'" (quoting *Phillips v. Walls,* 242 Ga. App. 309, 311(1), 529 S.E.2d 626 (2000)). The Georgia Department of Corrections' Standard Operating Procedures (SOPs) contain rules and policies that must be followed and enforced by prison officials. These rules and policies pertain to the housing, assignment, classification, and security of prison inmates and the facility, all of which are ministerial and all of which were breached by prison officials at Phillips State Prison. These breaches also extend to GDC in its failure to properly oversee the operation of the prison and its refusal to address the longstanding incompetence and corruption of some staff/prison officials.

2. Defendants' Commission of Malicious and Willful Acts Against Plaintiff Bars Them from the Protection of Sovereign Immunity.

In addition to the Defendants' negligence and failures, Plaintiff's Complaint outlines malicious and willful acts committed by prison officials while working within the scope of their employment. Specifically, prison officials retaliated against Plaintiff with the intent to deter and injure him and to cause him emotional distress. Plaintiff was subjected to retaliation because he filed an internal grievance and ante litem notice outlining the prison's failures, negligence, and corruption that resulted in his assault and injury and in the death of an inmate-Quafabian McBride. In fact, Plaintiff was the primary informant to the Atlanta Journal Constitution (AJC), which lead an investigation into the corruption and into prison officials' involvement in McBride's murder, all of which was known by GDC.

As a result, prison officials facilitated an assault against Plaintiff on or about October 19, 2022. On that date, Unit Manager Jameson and Officer Upshaw deliberately released two (2) inmates, Justin Henderson and Charles Thomas, out of their cells so they could throw feces and human waste on Plaintiff while Plaintiff was locked down in administrative segregation. Thereafter, the prison officials refused to allow Plaintiff to shower or get tested for communicable diseases. Instead, Plaintiff was forced to remain in his cell for days with feces and human waste on his person and throughout his cell. This retaliation was associated with both Plaintiff's grievance and his cooperation and involvement in the AJC's investigation.

Furthermore, prison officials acted maliciously and willfully when they retaliated against Plaintiff by keeping him in administrative segregation indefinitely and by transferring him to Telfair State Prison as a means of punishment and as a means to thwart Plaintiff's pending action against Defendants and his pending habeas corpus lawsuit.

Government actors or employees who engage in willful and/or malicious acts that injures another are not accorded sovereign immunity nor official immunity and, therefore, can be held liable. Todd v. Kelly, 244 Ga. App 404, 406 (Ga. App. 2000). In Todd v. Kelly, the Georgia Court of Appeals held that because a county officer did not act with malice or with intent to injure, he was protected by official immunity from liability for malicious prosecution. See also Anderson v. Cobb, 258 Ga. App. 159 (Ga. App. 2002)(Court found that county officer did not act with malice and granted summary judgment against Plaintiff for claims of false arrest, false imprisonment, and malicious prosecution); Tant v. Purdue, 278 Ga. App 666 (Ga. App. 2006)(finding that "a government employee can be held liable for the results of his discretionary act,…only if he acts with actual malice or with actual intent to cause injury in the performance of

his official functions..."). Given the prison officials' malicious, illegal, and corrupt conduct, the Defendants do not get the benefit of either sovereign immunity or official immunity.

**B. The Court Should Deny Defendants' Motion to Dismiss Because Plaintiff Complied With the Requirements of O.C.G.A. § 50-21-35 And, Because, Any Non-compliance Was Outside of Plaintiff's Control**

The GTCA provides for a limited waiver of sovereign immunity upon the satisfaction of service of process and mailing requirements of O.C.G.A §50-21-35. Under O.C.G.A § 50-21-35, claimants are required to satisfy both service of process and mailing requirements before there can be a valid waiver of the state's sovereign immunity. Specifically, O.C.G.A § 50-21-35 states that a plaintiff must both: 1) cause process to be served upon the chief executive officer of the state government entity involved, or his or her designee, at his or her usual address; and 2) cause process to be served upon the director of the Risk Management Division of the Department of Administrative Services, or his or her designee, at his or her usual address.[2] In addition to the above requirements, a plaintiff must also mail a copy of the complaint to the Attorney General in a particular manner and must attach a certificate to the complaint that this requirement has been met.

In Defendants' Motion to Dismiss, Defendants contend that Plaintiff did not satisfy the notice and mailing requirements of O.C.G.A§ 50-21-35 because Plaintiff failed: (1) to perfect service upon the CEO of GDC, (2) to perfect service upon the director of the RMD-DOAS, and (3) to mail a copy of the Complaint to the Attorney General's Office and attach a certificate to the Complaint that the requirement has been met. Defendants, however, acknowledge that

---

[2] The Georgia Tort Claims Act, O.C.G.A 50-21-35, cited herein was recently amended to include language requiring the chief executive officer of a state government entity and the director of RMD-DOAS to appoint a designee for service of process. See O.C.G.A 50-21-35 (2023 Edition).

6

service of process was made upon the Attorney General Office and Jenniffer Amos, Chief legal counsel for GDC.

Contrary to Defendants' claims, Plaintiff asserts that he satisfied the requirements of O.C.G.A § 50-21-35. Specifically, pursuant to the newly amended O.C.G.A § 50-21-35, Plaintiff perfected service of process upon Jenniffer Amos, legal counsel for GDC and a designee for service of process. Ms. Ammos is one of the legal representatives listed on the GDC's website to handle service of process in legal matters. In addition to serving the GDC, Plaintiff also initiated service upon the director of RMS-DOAS by way of the Fulton County Sheriff's Department. Specifically, Plaintiff, through his attorney, completed the Sheriff's Entry of Service form and tendered fifty (50) dollars in cash to the Fulton County Sheriff's Department to perfect service of process upon Wade Damron, director of RMS-DOAS. Plaintiff initiated service on Mr. Damron on or about July 25, 2023. Said service was initiated contemporaneously with service upon Wright Banks with the Attorney General's Office. Thus, Plaintiff tendered a total of one hundred (100) dollars in cash to the Fulton County Sheriff's Department.

Plaintiff, through his attorney, initially presented the Fulton County Sheriff's Department with two money orders as a form of payment. However, according to the Fulton County Sheriff's Department, they only accept cash as a form of payment. This policy or practice of only accepting cash is troubling considering that cash is not traceable and considering that the sheriff's department does not and did not provide Plaintiff with any receipt or confirmation of payment for service of process. Aside from the foregoing issue, it is also relevant to bring to the Court's attention that Plaintiff has had issues with serving RMS-DOAS since the inception of his case; specifically, as this issue relates to serving RMS-DOAS with ante litem notice prior to the filing of Plaintiff's lawsuit. Plaintiff had to send his ante litem notice at least three (3) times via

7

certified mail, because RMS-DOAS kept denying its receipt/delivery. Plaintiff can only conclude that the difficulty in serving notice and perfecting service of process on RMS-DOAS is due to RMS-DOAS's effort to deliberately avoid notice and service of process.

With respect to the mailing requirement of O.C.G.A § 5-21-35, Plaintiff contends that he in fact satisfied this requirement by perfecting formal service of process upon the Attorney General's Office. In its Motion to Dismiss, Defendants acknowledged that the Attorney General was served with the Complaint, but also claimed that Plaintiff failed to mail a copy of the Complaint to the Attorney General's Office and to attach a certificate to the Complaint. Notwithstanding this fact, Plaintiff perfected formal service of process and such proper notice of the action against Defendants was made as contemplated by O.C.G.A § 50-21-35.

While Defendant is correct that the law requires strict compliance with O.C.G.A § 50-21-35, the Georgia Supreme Court has previously held that "mailing a copy of the complaint to the Attorney General is not necessary to perfect service." Camp v. Coweta County, 280 Ga. 199, 200 (Ga. 2006). In Camp v. Coweta County, the Court held that O.C.G.A § 50-21-35 "requires the plaintiff only to mail a copy of the complaint to the Attorney General, not to formally serve the Attorney General with process." Id at 201. The Court further held that "the legislature clearly did not intend to require the plaintiff to serve the Attorney General as a means of perfecting service." Id. Instead, "the mailing of the complaint to the Attorney General is purely a notice provision, as the legislature intended the Attorney General to receive prompt notice of the complaints filed against the State." Id.

Considering the holding in Camp v. Coweta County, Plaintiff's formal service of process on the Attorney General exceeded the mailing requirement of O.C.G.A § 50-21-35 and provided the Defendant with more than sufficient notice of this action, as was contemplated by the legislature. Furthermore, it can be inferred that Plaintiff's failure to attach a certificate to the Complaint is of no consequence given that the formal service of process and the return of service form signed by the Attorney General are more than enough confirmation that notice has been served on Defendants.

### III. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S GEORGIA WHISTLEBLOWER ACT RETALIATION CLAIM SHOULD BE DENIED BECAUSE PLAINTIFF WAS EMPLOYED BY PHILLIPS STATE PRISON AND THEREFORE SHOULD RECEIVE THE SAME PROTECTION AS ANY OTHER PUBLIC EMPLOYEE

The Georgia Whistleblower Act (GWA) prohibits public employers from retaliating against public employees who have engaged in protected activity under the statute and establishes a right of action for public employees who have been the subject of retaliation. O.C.G.A § 45-1-4. The GWA provides:

> No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.

O.C.G.A § 45-1-4(d)(2). The Georgia Court of Appeals has previously held that to establish a claim under GWA a public employee must show: "' (1) [he] was employed by a public employer; (2) [he] made a protected disclosure or objection; (3) [he] suffered an adverse employment action; and (4) there is some causal relationship between the protected activity and the adverse employment action..."' Franklin v. Pitts, 349 Ga. App. 544, 547 (Ga. App.

9

2019)(quoting *Murray-Obertein v. Ga. Govt. Transparency & Campaign Finance Comm.*, 344 Ga. App. 677, 680-681 (2018)).

(1) <u>Plaintiff Was a Public Employee</u>

Pursuant to the GWA a "public employee" is "any person who is employed by the executive, judicial or legislative branch of the state or by any other department, board, bureau, commission, authority, or other agency of the state…" O.C.G.A § 45-1-4.

Plaintiff is an inmate within the Georgia Department of Corrections and was voluntarily employed as an Education Department Orderly while incarcerated at Phillips State Prison. In Plaintiff's capacity as an Orderly, he was required to undergo training and obtain certification in the safe handling of hazardous chemicals pursuant to Georgia Department of Labor regulations, O.C.G.A § 45-22-7 and O.C.G.A § 45-22-8. In addition to undergoing training, Plaintiff received compensation for his work in the form of money, extra privileges, and/or additional benefits that were not available to inmates at Phillips State Prison without details.

In support of Defendants' Motion to Dismiss, Defendants' cited <u>Simmons v. Coweta County</u>, 299 Ga. App. 550, 552 (Ga. App 1997), for the proposition that "inmates housed in a county's correctional institute are not employees of a county merely because he or she is compelled to work for the correctional institute." However, in citing <u>Simmons v. Coweta County</u>, *supra*, Defendants fail to acknowledge the factual distinctions between that case and Plaintiff's case. The inmate in <u>Simmons v. Coweta County</u> was incarcerated in a county correctional facility. The inmate was compelled to work and, therefore, was determined by the Georgia Court of Appeals to be an involuntary servant. The inmate was not compensated for his

labor. The inmate's claim was related to an on-the-job injury he sustained. And, finally, the court analyzed the inmate's status from an insurance liability perspective.

Contrary to the inmate in Simmons v. Coweta County, Plaintiff was incarcerated in a state correctional facility at the time of his injuries. Plaintiff work as an Orderly was voluntary. Plaintiff was compensated for his labor. Plaintiff's injuries are related to acts of retaliation and, therefore, are analyzed under the GWA statute. The GWA statute does not exclude either servants or inmates from its protection. Therefore, it is arguable that due process and equal protection should extend that protection to Plaintiff. Additionally, the GDC's SOPs specifically prohibit retaliation for reporting misconduct. And, most importantly, Phillips State Prison has official notices posted stating that inmates may not be retaliated against for reporting OSHA violations and staff misconduct, among other things.

(2) Protected Disclosure or Objection

A protected disclosure or objection is one that involves a complaint made by a public employee to a supervisor or a government agency regarding a violation of a law, rule, or regulation. Hence, pursuant to the GWA, "no public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency." O.C.G.A § 45-1-4(2).

Plaintif's retaliation claim under GWA is based on the retaliatory actions taken against him by prison officials after he filed an internal grievance and ante litem notice regarding the prison's failures, negligence, violation, and non-compliance with the law and with GDC's Standard Operating Procedures. Upon filing his internal grievance and ante litem notice, Plaintiff was subjected to impermissible retaliation.

(3) <u>Adverse Employment Action</u>

While the GWA does not provide a definition for adverse employment action, it does define "retaliation", as retaliation in an employment context occurs when an employer takes an adverse employment action against a public employee as result of his/her engagement in protected activity. "Retaliation" is defined as:

> "the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms of or condition of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency."

O.C.G.A § 45-1-4 (5). Based on the definition provided, it can be surmised that an adverse employment action is a discharge, suspension, demotion, or any other similar acts taken against a public employee. To establish that an adverse employment action has occurred, "'an employee must show that []he suffered a serious and material change in the terms, conditions, or privileges of h[is] employment.'" Franklin v. Pitts, 349 Ga. App 554, 555 (Ga. App 2019) (quoting *Walker v. Indian River Transp. Co.*, 741 Fed. Appx. 740, 749 (III) (B) (11th Cir. 2018)). The seriousness and materiality of the change is viewed "objectively from a reasonable person perspective in the circumstances." Id. at 556 (quoting *Grimsley v. Marshalls of MA, Inc.*, 284 Fed. Appx. 604, 608 (II) (A) (11th Cir. 2008)).

Plaintiff suffered an adverse employment action after he engaged in protected activity and thus filed an internal grievance and his ante litem notice. Specifically, Plaintiff was kept in administrative segregation indefinitely and denied the ability to return to the general population and thus his work detail. This retaliatory act is akin to a discharge or suspension and has a long-term impact on Plaintiff's parole success since the parole board considers inmates' incarceration work history in their parole decisions. In further efforts to retaliate, Plaintiff was later transferred

to Telfair State Prison, a close security level facility which does not provide Plaintiff with the same or similar work detail as Phillips State Prison. In fact, Plaintiff has no ability to work, because his record has been notated to reflect that he is not permitted to work.

(4) Causal Relationship

There is a causal relationship between Plaintif's protected activity and the adverse employment action. Specifically, Plaintiff was kept in administrative segregation indefinitely after he filed his grievance and ante litem notice following his assault. Contrary to the prison's practice of returning inmates back to the general population after a fight or assault, Plaintiff was kept in administrative segregation. Furthermore, Plaintiff was visited and threatened by Lieutenant Brown as result of him filing an internal grievance. The same Lieutenant Brown who subsequently set up the attempted hit on an inmate which resulted in Quafabian McBride's death. And, more notably, Plaintiff was transferred during the Department of Justice's (DOJ) investigation into his assault and claims raised within his ante-litem notice.

## IV. **STATE OF GEORGIA AND PHILLIPS STATE PRISON**

In Defendants' Motion to Dismiss, Defendants assert that the State of Georgia and Phillips State Prison are improper Defendants under O.C.G.A § 50-21-25(b). Plaintiff concedes and has filed his First Amended Complaint to reflect the removal of both Defendants.

## V. <u>CONCLUSION</u>

Based upon the foregoing, Plaintiff respectfully requests that this Court **DENIES** Defendants' Motion to Dismiss.

Respectfully submitted,

THE WILLIAMS LAW FIRM, LLC

/s/ Iymaan Williams
Iymaan Williams
Attorney for Defendant
Georgia Bar NO: 659855


Iymaan Williams
The Williams Law Firm
863 Flat Shoals Rd, SE #164
Conyers, Georgia 30094